UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

FILED
JAN 2 6 2012
DENNIS P. AVARONE, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

No. 5:10-CT-3093-BO

STANLEY EARL CORBETT, )
    Plaintiff, )
     )
v. ) **O R D E R**
     )
G.J. BRANKER, et al., )
    Defendants. )

On June 10, 2010, plaintiff, a state inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983. On August 24, 2011, defendants G.J. Branker, Officer Williford Fox, Officer Timothy Lee, Officer Elena McDaniels, Officer Nathan McMillian, and Lieutenant Robin Shelton filed a motion for summary judgment. (D.E. # 25). On September 30, 2011, Sergeant Andino and Officer Deming filed a motion for summary judgment in which they sought to fully incorporate the August 24, 2011, motion pursuant to Federal Rules of Civil Procedure, Rule 10(c). (D.E. # 39). Corbett has filed several responses, and the matter is ripe for determination.

i.    Issues

The issues before the court are that defendants used excessive force against him in violation of the Eighth Amendment, and that correctional staff tampered with his legal mails, snacks were being withheld, and his cell had no lighting in retaliation for grievances filed regarding the excessive force.

ii.    Discussion

    a.    Summary Judgment

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of

law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A trial court reviewing a summary judgment motion should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. See Matsushita, 475 U.S. at 587. The court can rely on the medical affidavits and prison medical records, including mental health records, in ruling on a motion for summary judgment. See generally, Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998); Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982).

    b.    Factual Outline

Stanley Corbett states that on October 17, 2008, he was masturbating when a guard, Officer Deming, was retrieving lunch trays. When plaintiff continued to masturbate the officer put down the trays, stuck her arm into the food passage door and sprayed plaintiff's penis with mace. After plaintiff cleaned himself off, he went for a medical screening. Plaintiff was charged with infractions for masturbating, refusing to stop, and for holding the food passage door.

Stanley Corbett also stated that 2 days later, on October 19, 2008, he threw a cup of hot water on Officer Deming because she had sprayed him with the mace. Officer Deming thought the liquid was urine and feces. Plaintiff alleges that his cell was then sprayed with mace, but that plaintiff attempted to hold his pillow over the food passage door in an attempt to block the mace. The guards, thereafter, let plaintiff out of his cell, pulled him to the floor, and beat him. Next he was put in full restraints and taken into a mop closet and beaten again. Plaintiff states through out this event he went in and out of consciousness. It is some what unclear if the reference to the mop closet is actually a mop closet or an area for decontamination. In fact in plaintiff's memorandum in support of his response he attaches as exhibit A a photograph of the "janitorial/decontamination closet." He states that from the alleged incident he suffers headaches, chest pain, lower back pain, pain in his left shoulder, and numbness in his point fingers, thumbs and wrists. The incident has required plaintiff to be prescribed pain medication as well as anti-depressants. Plaintiff states that because of these events and plaintiff's grievances over them he has suffered retaliation by defendants through the tampering of his mail. Specifically, he states that "Plaintiff's legal mail (which was this complaint) was tampered with by the defendants co-workers." (D.E. # 49, "Mem. in Support of Plaintiff's Response" p. 2) In plaintiff's amended complaint, he also makes an allegation about defendant Lee's refusal to allow plaintiff to have a snack bag.

Dating back to 2005, plaintiff has complained of left shoulder pain. On December 2, 2005, his medical records state, "Bursitis vs. Rotator Cuff tear." Plaintiff was prescribed an anti-flammatory drug (Naprosyn 500 mg 1 by mouth after meals twice daily x 2 weeks). On January 2, 2006, plaintiff also complained of left shoulder pain. Heat was ordered to apply the

3

heat to the area and plaintiff was ordered to return as needed. On April 17, 2006, plaintiff's medical chart refers to "bursitis left shoulder." (D.E. # 26, Adcock Aff. ¶¶ 6-9.)

    c.    Excessive Force

It is clearly established that the Eighth Amendment forbides the "unnecessary and wanton infliction of pain" against inmates. Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). Not every infliction of pain is forbidden, however, and prison officials may apply force to an inmate "in a good faith effort to maintain or restore [prison] discipline." Id. at 320 (internal quotation marks omitted). However, where prison officials use force "maliciously and sadistically for the very purpose of causing harm," an Eighth Amendment violation has occurred. Id. at 320-21 (internal quotation marks omitted). Furthermore, the Supreme Court has held "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Wilkins v. Gaddy, ___ U.S. ___, ___, 130 S. Ct. 1175, 1176 (2010). The court must look at "the nature of the force rather than the extent of the injury." Id. "This is not to say the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." Id. at 1178 (citation omitted). It is one factor in applying and reviewing the Eighth Amendment analysis. Id.

In determining whether prison officials have acted maliciously and sadistically, a court should balance: (I) "'the need for the application of force,'" (ii) "'the relationship between the need and the amount of force that was used,'" (iii) the threat reasonably perceived by the responsible officials, and (iv) "any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). Not every malevolent touch by a prison guard, later determined in the calm of a judge's

chambers to be gratuitous, gives rise to a federal cause of action. Hudson, 503 U.S. at 9 (citing Johnson, 481 F.2d at 1033). Prison officials are charged with balancing competing governmental interests, such as: the maintenance of order; protection of correctional officers, prison staff and other inmates; and inmates' rights to be free from cruel and unusual punishment. Whitley, 475 U.S. at 321. When correctional officers use force to keep order, they have little time for considered reflection and must quickly and decisively balance the need to maintain order and restore discipline through force against the risk of injury to inmates. Hudson, 503 U.S. at 6. Thus, in excessive force cases, the subjective component is measured by the same yardstick as the objective component, "whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7.

Plaintiff cannot show that defendants' use of force was excessive. The summary judgment materials show that defendants used force necessary to restore order. On October 19, 2008, Officer Deming was collecting food trays when plaintiff threw what appeared to be a cup of feces and urine on the officer. Plaintiff admits throwing hot water on Officer Deming out of anger. Next, plaintiff attempted to prevent the officer from securing the food passage door. Next, Officer Lee and McMillian arrived on the scene and one burst of OC spray was released into the cell. The court notes that defendants' summary judgment material states that it was Sergeant Andino and defendant Fox who first arrived and delivered the burst of pepper spray. An altercation of some kind next ensued through the food passage door. Plaitniff admits he again tried to hold that door closed.

When the door to the cell was opened, Sergeant Andino and Defendant Fox attempted to get plaintiff to the floor. At this point, all the officers were present. Plaintiff asserts that a

5

beating then occurred in which he lost consciousness. Thereafter, plaintiff was decontaminated and taken to the nurse's station for a use of force screening.

Plaintiff has an extensive infraction history, which includes disobeying orders, assaults, and use of profane language. See http://webapps6.doc.state.nc.us/opi/viewoffenderinfractions.do?method=view&offenderID=0716025&listpage=1&listurl=pagelistoffendersearchresults&searchLastName=corbett&searchFirstName=stanley&searchMiddleName=e&obscure=N (last viewed Jan. 25, 2011). Plaintiff's propensity for disobeying orders and challenging prison staff clearly creates a heightened security concern by guards and risk for guards when dealing with plaintiff. On the date in question, plaintiff threw hot water at defendant Deming out of anger. At a minimum plaintiff then attempted to close the food passage door and was absolutely not in compliance with prison policy and acting in an assaultive manner. The amount of force used by defendants was limited to the amount necessary to restrain plaintiff and to restore order; it was not maliciously and sadistically used to cause harm.

The medical records support this holding. Plaintiff's medical records and the affidavit of Tammie Adcock show that plaintiff was complaining of shoulder pain as far back as 2005. Plaintiff's medical records also rebut allegations that defendants' actions have caused him emotional distress. Plaintiff alleged he is now taking the anti-depressant Zoloft as a result of Defendants' actions. However, plaintiff's medical records show that prior to the October incident, plaintiff was already taking an anti-depressant. Because the use of force was appropriate and used solely for the purpose of restoring order, defendants should be granted summary judgment.

6

ii.  Retaliation

Claims of retaliation by prison inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir.1994). "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir.1999).

To address this claim, the court shall review that which is necessary to establish a claim for retaliation. The right at issue here is that inmates have a right to reasonable access to state and federal courts and to communicate with attorneys. See, e.g., Ex Parte Hull, 312 U.S. 546, 549 (1941); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978) (per curiam). Legal mail generally may not be opened outside of the presence of the prisoner-addressee. Wolff v. McDonnell, 418 U.S. 539, 578 (1974). However, in order to state a claim for denial of access to the courts, the inmate must show actual injury or that defendants' conduct hindered his efforts to pursue a legal claim or show actual harm by the opening. See, e.g., Lewis v. Casey, 518 U.S. 343, 351–54 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc); American Civ. Liberties Union v. Wicomico County, 999 F.2d 780, 785-86 (4th Cir. 1993). Further, isolated incidents without negative consequences to plaintiff do not constitute a constitutional deprivation of one's rights. See, e.g., Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (occasional accidental opening of

legal mail does not state of claim of the denial of one's right to the access of court). Plaintiff has failed to show any harm to any legal matters because of the alleged mail incident or incidents.

As for the denial of his snack bag as a form of retaliation, the claim is meritless. As pointed out by defendants it appears that the snacks continue to be distributed, but at different times.

Accordingly, Sergeant Andino and Officer Deming's motion to amend the answer (D.E. # 36) is ALLOWED. Defendants' motions for summary judgment (D.E. # 25 and # 39) are ALLOWED. Lastly, Corbett's motion for an order to compel discovery (D.E. $# 47) is DENIED.

SO ORDERED, this the 25 day of January 2012.

TERRENCE W. BOYLE
United States District Judge